The STATE of Ohio

v.

NAMAY.█

The STATE of Ohio

v.

FIELY.█

Cleveland Heights Municipal Court,
Cuyahoga County.

Nos. CRB 9901821 and CRB 9901810.

Decided April 7, 2000.

*Kim T. Segebarth,* Cleveland Heights Prosecutor, for plaintiff.

*Jeffrey F. Kelleher,* for defendant George Lamay.

*Robert G. Walton,* for defendant Lawrence F. Fiely.

LYNN C. TOLER, Judge.

This matter comes on for consideration on defendants' motion to suppress the evidence. The defendants are asking this court to suppress all items and information obtained by the Cleveland Heights Police Department following their entry into 3150 East Derbyshire on September 30, 1999. The defendants seek this relief on the grounds that the police did not have a warrant to enter the premises and that the circumstances giving rise to entry did not fall within any exception to the warrant rule.

The facts adduced at hearing relevant to this matter are as follows. On September 30, 1999, at approximately 11:51 p.m., David Ferguson called 911 to report a loud party at 3150 East Derbyshire. In that call, Ferguson said that he could hear yelling, screaming, and profanity coming from the home. Officer Annette Kromer was dispatched to the scene. On her approach to the residence she heard yelling and screaming coming from the reported location, audible to her from four houses away.

Commander Sudyk also reported to the scene with two other officers. His normal procedure on responding to such a call is to ask the owners or lessees of the premises to come to the door, issue a disturbance citation, and have the lessee shut the party down. However, Sudyk admitted at the hearing that his purpose for being there on this occasion was to respond to the noise complaint, shut down the party because of numerous past complaints received about that house, *and* to check for underage drinkers. Before going to the front door he dispatched Kromer to the back in an effort to contain any flight that might occur.

Sudyk stood outside the residence for approximately two minutes. Looking through the front picture window, Sudyk saw that a large party was going on. He also saw three youthful-looking males sitting at a table drinking beer. Once the commander knocked, the three men looked up and ran to the rear of the house. Then someone in the house opened the front door and the commander asked to see the lessees of the house. No one responded to his requests and

partygoers began rushing to the rear of the house. While at the front door, the commander noted that there appeared to be young people in the house that were very intoxicated. He also saw a young man on crutches who was unable to stand even with the aid of his crutches.

At that point the commander entered the house and continued to ask the occupants to talk to the lessees. After approximately 10 minutes and several denials, the defendants, George Namay and Lawrence Fiely, admitted that they were the lessees. The commander estimates that there were approximately 75 people in the house, most of whom looked to be 18 or 19 years old.

After determining the identity of the lessees, Sudyk asked the partygoers if any of them were under 21. The majority raised their hands in response. Thereafter, the commander asked the partygoers for identification to determine their ages. He also conducted field sobriety tests on nearly all of the occupants, in part, to determine whether it was safe for them to leave. As a result three individuals were arrested for intoxication, all of whom were under the age of 21. The defendants were arrested and charged with disorderly conduct and supplying alcohol to individuals under 21.

The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. See *Payton v. New York* (1980), 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639. "Physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Id.* at 586, 100 S.Ct. at 1379, 63 L.Ed.2d at 650.

A warrantless search is presumed unreasonable under the Fourth Amendment except in certain narrowly defined circumstances. *Katz v. United States* (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. Those exceptions are: (1) exigent circumstances, (2) hot pursuit of a fleeing suspect, (3) search incident to lawful arrest, (4) consent signifying a waiver of constitutional rights, (5) an administrative search, (6) stop and frisk doctrine, and (7) the plain view doctrine. *Stone v. Stow* (1992), 64 Ohio St.3d 156, 164, 593 N.E.2d 294, 300, fn. 4.

Here, the state contends that exigent circumstances justified the officers' entry into the home. A determination of exigency sufficient to justify warrantless entry must be made on a case by case basis. *Mincey v. Arizona* (1978), 437 U.S. 385, 392–392, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290, 300. The appropriate inquiry for determining the propriety of such a warrantless entry is whether, based on the totality of the circumstances, it was reasonable for the officer to believe that an exigent or emergency situation existed. *State v. Applegate* (1994), 68 Ohio St.3d 348, 626 N.E.2d 942; *State v. Oliver* (1993), 91 Ohio App.3d 607, 632 N.E.2d 1382. Therefore, this court must decide whether exigent circumstances existed in this case *and* whether the officers' actions in

entering the home were reasonable. *Id.; State v. Williams* (1978), 55 Ohio St.2d 82, 86, 9 O.O.3d 81, 83, 377 N.E.2d 1013, 1016.

The state urges this court to follow the decision of the Sixth Circuit Court of Appeals in *United States v. Rohrig* (C.A.6, 1996), 98 F.3d 1506, where the court held that the abatement of an ongoing nuisance under certain circumstances is a legitimate governmental interest that can justify warrantless entry into an individual's home.

It appears that the Eight District Court of Appeals has yet to speak directly on the issue of whether an ongoing nuisance can justify warrantless entry as the Sixth Circuit has in *Rohrig*. In fact, as recently as 1999, the Eight District has held that "the proper legal standard for determining whether there are exigent circumstances contemplates whether 'there is hot pursuit of a fleeing felon, imminent destruction of evidence, [citation omitted] the need to prevent a suspect's escape or the risk of danger to the police or to other persons inside or outside the dwelling.'" *N. Royalton v. Bramante* (Apr. 29, 1999), Cuyahoga App. No. 74019, unreported, 1999 WL 258188. It did not mention the abatement of an ongoing nuisance.

In fact, Ohio courts have generally examined factually similar situations in terms of more traditional exceptions to the warrant rule. See, *e.g.*, *State v. Wadsworth* (Aug. 11, 1999) Medina App. No. 2903–M, unreported, 1999 WL 598840, in which the Ninth District Court of Appeals upheld a lower court's refusal to suppress evidence of underage drinking gathered when officers responded to a complaint of a loud party. Once there, an officer saw, through a window, a case of beer and six to seven individuals who appeared to be under the legal drinking age of 21. Based on the court's finding that one of the occupants said, "Oh my God, police," the officers' warrantless entry was upheld on the grounds that immediate action was necessary to preclude the destruction of evidence.

See, also, *Alliance v. Davis* (June 1, 1999), Stark App. No. 1998 CA 00313, unreported, 1999 WL 744167, in which officers responding to a complaint of a loud party saw, through a front room picture window, an individual light and smoke a water bong. Based on case law that provides that the police are privileged to go on private property when it is within the proper exercise of their duties, see *State v. Chapman* (1994), 97 Ohio App.3d 687, 647 N.E.2d 504; R.C. 2911.21, and once there, the police are free to observe whatever may be seen from a place where they are entitled to be, *Florida v. Riley* (1989), 488 U.S. 445, 109 S.Ct. 693, 102 L.Ed.2d 835, the appellate court found that the officers' warrantless entry was justified, as they were legitimately on the property in response to a call and once there the incriminating evidence was in plain view.

■ Because the occupants of the defendants' home repaired *en masse* to the back of the house upon seeing the officers, this court believes that the likelihood of destruction of evidence is no less present here than in *Wadsworth.* Likewise, this court believes that the officers' observations in this case raise a plain view argument not unlike that which was found to justify warrantless entry in *Davis.*[1]

■ That notwithstanding, this court feels that the most compelling argument for warrantless entry was made by the city when it brought this court's attention to *Rohrig.* While it appears that the Eight District has not embraced the reasoning in *Rohrig,* this court could not find any case law that has rejected it. Moreover, it appears that other Ohio appellate courts have recognized the governmental interest cited in *Rohrig* ; acknowledging a police officer's duty to preserve the peace. *State v. Russell* (1998), 127 Ohio App.3d 414, 419, 713 N.E.2d 56, 58–59; *Akron v. Price* (1999), 134 Ohio App.3d 464; 731 N.E.2d 280. Last, as the Sixth Circuit stated, the examination of reasonableness mandated by the warrant exceptions is "flatly at odds with any claim of a fixed and immutable list of established exigencies." *Rohrig* at 1519. Having determined that controlling authority does not preclude this court from following *Rohrig,* this court has examined the reasoning therein and found it persuasive. Nuisance abatement is a legitimate governmental purpose that can, under the appropriate circumstances, justify a warrantless entry. Having made that determination this court must now consider whether the police's actions were justified in this case.[2]

In *Rohrig,* the Canton Police Department received multiple complaints of loud music emanating from the defendant's home in the middle of the night. Upon arrival, the police found numerous citizens standing outside in their pajamas seeking relief from the disturbance. After knocking and receiving no response, the police entered the defendant's home. While searching for the source of the

---

1. Sudyk testified at trial that his intention was to shut down the party and check for underage drinkers even before he arrived at the premises. That notwithstanding, all of the officers' actions were objectively reasonable under the circumstances. "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis. * * * [T]he Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent." *Whren v. United States* (1996), 517 U.S. 806, 813–814, 116 S.Ct. 1769, 1774–1775, 135 L.Ed.2d 89, 98.

2. Cf. *State v. Scott M.* (1999), 135 Ohio App.3d 253, 733 N.E.2d 653, a case factually identical to the instant matter in which the Sixth District found warrantless entry to be unjustified. However, the test used in *Scott M.* was taken from a case in which officers made a warrantless entry to arrest a particular suspect. Many of the factors enumerated in that test simply do not apply to nuisance abatement; for example: (1) whether there was probable cause to believe that the suspect committed the crime at issue, (2) whether there was a strong reason to believe that the suspect was on the premises, and (3) whether the time between the occurrence of the offense and the arrest was reasonable. While the Eighth District has also used this test, this court does not believe that it has done so under circumstances similar to these. See *Ohio v. Greene* (Oct. 2, 1986), Cuyahoga App. No. 51008, unreported, 1986 WL 11511.

music the officers found marijuana plants in the basement and the defendant asleep in his bed. Thereafter, defendant was charged with violating drug laws and sought to suppress evidence of the marijuana in his house.

The Sixth Circuit considered three factors in determining whether the warrantless entry was justified: (1) whether the government demonstrated a need for immediate action, (2) whether the government's interest was sufficiently important to justify a warrantless entry, and (3) whether the government interest outweighed the homeowner's privacy interests. The court will now apply those factors to the facts presented here. *Rohrig*, 98 F.3d at 1518.

This court believes that the government presented a need for immediate action for a number of reasons: the preservation of evidence, the abatement of an ongoing nuisance, and the prevention of flight. The disturbance call established that the activity in the home was disturbing to the neighborhood. However, upon arrival of the police, the defendants refused to offer any assistance to the officers to quell the disturbance. In fact, they would neither identify themselves nor come to the door. It was late at night and the courts were not open; a warrant could not be secured quickly. Meanwhile, the noise continued.

In addition, the partygoers rushed to the back of the house upon seeing Sudyk in an attempt to flee, as had been the commander's experience with similar circumstances in the past. It would be practically impossible for four officers to contain some 75 people within a home while a warrant request could be prepared and a neutral magistrate could be found to rule on that request well after court hours.

While the facts presented in *Rohrig* established greater exigencies in the context of the degree of neighborhood disruption, that case did not contain the added factors of diminished expectations of privacy, the apparent flight of the partygoers, the possibility of the destruction of evidence accompanying the flight, and the reasonable suspicion that multiple first degree misdemeanors were in the process of being committed—all of which militates in favor of warrantless entry. Moreover, the level of the community's ire in *Rohrig*, though weighed, was not a determinative factor in the Sixth Circuit's decision. In fact, in making its decision, the Sixth Circuit cited, with approval, two cases in which the circumstances did not rise to the level of the severity of the facts in *Rohrig* for the proposition that a disturbance of the peace might well present exigent circumstances that would justify warrantless entry.[3]

---

3. See *People v. Lanthier* (1971), 5 Cal.3d 751, 97 Cal.Rptr. 297, 488 P.2d 625 where the warrantless intrusion into a locker was upheld based on one complaint of noxious odors emanating therefrom; *United States v. Boyd* (S.D.N.Y.1976), 407 F.Supp. 693, 694, where the

One must next consider whether the government's interest in quelling a disruptive party and making arrests for underage drinking was sufficiently compelling to justify a warrantless intrusion. In this case, at least one occupant of a residential neighborhood was disturbed late at night by shouting and foul language from the defendants' house. Moreover, upon responding to the call the officers witnessed acts which gave them probable cause to believe that multiple first degree misdemeanors were being committed in the home—underaged drinking. They also saw a number of very intoxicated young people, some who appeared to be in need of assistance. This court finds that the governmental interest in addressing a combination of all of these concerns was sufficiently compelling to warrant entry.

The foregoing interests must next be weighed against the defendants' legitimate expectations of privacy. It has been routinely held that "what a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection". *Katz v. United States* (1967), 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576, 582. The defendants can only invoke the Fourth Amendment's protections by satisfying "a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.' " *Katz v. United States,* 389 U.S. at 361, 88 S.Ct. at 516, 19 L.Ed.2d at 588 (Harlan, J., concurring). The *Rohrig* court reiterated that precept. *Rohrig* at p. 1522.

Here, the defendants' expectations of privacy were clearly diminished far beyond those in *Rohrig* in which the defendant was home alone. The defendants here had some 75 people in their home at a party with all of the ingress, egress, and exposure that necessarily accompanies such events, unlike the defendant in *Rohrig,* who was asleep. They yelled and screamed to such a level that at least one neighbor was privy to their conversations and profanity while in his home. They drank beer, a first degree misdemeanor for many, in front of a picture window in full view of anyone who would pass the house. Clearly, the defendant's traditional expectations of privacy were compromised, thus tipping the scales further in favor of warrantless intrusion.

Having weighed all three factors set forth in *Rohrig,* this court finds that the officers' warrantless entry into the defendants' home in this case was reasonable under the circumstances.

■ This decision does not mean that officers may make a warrantless entry into a home based solely on a report of loud music. There must be concomitant circumstances requiring immediate action. Moreover, the officers must be

courts concluded that leaking water sufficiently threatened the safety of inhabitants of neighboring apartments to justify a warrantless intrusion.

reasonable and employ the least intrusive means by which their legitimate governmental interests can be effectively accomplished. This court, however, believes that the officers did so in this instance.

Now that the court has determined that the officers had a right to enter the premises, the inquiry now turns to the officers' right to ask for identification from the partygoers to determine their age. A warrantless entry mandated by exigent circumstances must be " 'strictly circumscribed by the exigencies which justify its initiation.' " *State v. Applegate* (1994), 68 Ohio St.3d 348, 350, 626 N.E.2d 942, 944, quoting *Terry v. Ohio* (1968), 392 U.S. 1, 26, 88 S.Ct. 1868, 1882, 20 L.Ed.2d 889, 908. However, once the police have entered appropriately under the exigent circumstance exception they may seize evidence of criminal activity that is in plain view. *Michigan v. Tyler* (1978), 436 U.S. 499, 98 S.Ct. 1942, 56 L.Ed.2d 486.

It has been held that the observation of youthful-looking persons engaged in acts prohibited to individuals of that age constitutes facts sufficient to justify an investigatory stop. See *Akron v. Fair* (1994), 68 Ohio Misc.2d 40, 646 N.E.2d 1205 (where drugs seized from an adult who was stopped and frisked on a suspicion of a curfew violation because of his youthful appearance and the lateness of the hour were held admissible).

See, also, *State v. Reynolds* (Nov. 19, 1999), Montgomery App. Nos. 17819, 17821 and 17822, unreported, 1999 WL 1043919, in which officers were dispatched to a scene of a loud party. Once there, they spotted an individual known to have an active warrant and pursued him into the house. While in the house they found youthful-looking individuals drinking alcoholic beverages. The officers inquired about their ages, gave sobriety tests and checked identification. All of the aforementioned activity was deemed appropriate as the officers had a legitimate reason for the initial warrantless entry (a fleeing suspect) and evidence of criminal conduct once inside (youthful-looking individuals consuming alcohol).

In this case the officers saw a number of individuals with beers in their hands who appeared to be underage. This was sufficient to warrant further inquiry as to the individuals' ages. For all of the foregoing reasons this court finds that neither the officers' entry into the home nor their request for identification violated the United States or Ohio Constitutions.

Defendants' motion to suppress evidence is hereby denied.

*Motion denied.*