The STATE of Ohio, Appellee,

v.

BREWSTER, Appellant.

[Cite as *State v. Brewster*, 157 Ohio App.3d 342, 2004-Ohio-2722.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–030043, C–030052 and C–030053.

Decided May 28, 2004.

Michael K. Allen, Hamilton County Prosecuting Attorney, and Scott M. Heenan, Assistant Prosecuting Attorney, for appellee.

Clodfelter & Gutzwiller and David Clodfelter, for appellant.

DOAN, Judge.

{¶ 1} Defendant-appellant, Michael Brewster, was convicted of one count of possessing criminal tools pursuant to R.C. 2923.24(A) and ten counts of forgery pursuant to R.C. 2913.31(A)(2) under indictment number B–0108028. He was also convicted of 20 counts of forgery under a second indictment, number B–0203401. He appeals from those convictions, raising nine assignments of error, which we address out of order. We affirm the findings of guilt but remand the case for resentencing.

## I.  Speedy Trial

{¶ 2} In his first assignment of error, Brewster states that the trial court erred in failing to grant his motion to dismiss for lack of a speedy trial. He argues that 413 days had run from his arrest until the time of trial, well over the time limit set forth in R.C. 2945.71, and that the state failed to show that the time was tolled. This assignment of error is not well taken.

{¶ 3} R.C. 2945.71(C)(2) provides that a person charged with a felony shall be brought to trial within 270 days after arrest. For computing time, each day during which the accused is held in jail in lieu of bail shall be counted as three days. R.C. 2945.71(E).

{¶ 4} Despite Brewster's arguments to the contrary, the triple-count provision did not apply in this case. Even though the state did not introduce documentary evidence of a holder, the record amply demonstrates that Brewster was wanted on open warrants in other jurisdictions and that his detention was not solely due to the pending charges in Hamilton County. See *State v. MacDonald* (1976), 48

Ohio St.2d 66, 70–71, 2 O.O.3d 219, 357 N.E.2d 40; *State v. Phillips* (1990), 69 Ohio App.3d 379, 381, 590 N.E.2d 1281. That the state did not introduce a copy of the holder itself into evidence did not change that conclusion. *State v. McDaniels* (June 17, 1993), 8th Dist. No. 62541, 1993 WL 215388. See, also, *State v. Brown* (1992), 64 Ohio St.3d 476, 480–482, 597 N.E.2d 97; *State v. Baker* (Nov. 30, 1992), 12th Dist. No. CA92–01–009, 1992 WL 348222.

{¶ 5} Consequently, the state had 270 days in which to bring Brewster to trial. Because he showed that he was not tried within 270 days of his arrest, Brewster established a prima facie case of a violation of the speedy-trial statutes. *State v. Hirsch* (1998), 129 Ohio App.3d 294, 315, 717 N.E.2d 789; *State v. Geraldo* (1983), 13 Ohio App.3d 27, 28, 13 OBR 29, 468 N.E.2d 328.

{¶ 6} R.C. 2945.72(H) states that "[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted upon other than the accused's own motion" can extend the time within which the state must bring the accused to trial. The state bears the burden to show that actions or events chargeable to the defendant have tolled enough time so that the defendant is tried within the speedy-trial period. *Hirsch,* supra, 129 Ohio App.3d at 315–316, 717 N.E.2d 789; *Geraldo,* supra, 13 Ohio App.3d at 28, 13 OBR 29, 468 N.E.2d 328.

{¶ 7} In this case, the determination of when and for how long the speedy-trial period was tolled presents some difficulty. Brewster's co-defendant was his brother, Garry. Garry represented himself and filed numerous motions on his own behalf and on behalf of Brewster, even though Brewster was represented by counsel. The trial court eventually struck all of the motions filed by Garry on behalf of Brewster. Subsequently, Brewster purportedly filed a "Motion to Join Pro Se Co–Defendant in all Pretrial Matters (Motions + Objections)," but it appeared to be in Garry's handwriting.

{¶ 8} For our analysis, we consider only motions that were clearly attributable to Brewster or in which Brewster and his counsel clearly took part, such as a motion to suppress. We also accept, for argument's sake, Brewster's contention that the speedy-trial period for all charges, including those in the second indictment, ran from the time of his arrest because the second indictment was based on the same facts as the first indictment. See *State v. Adams* (1989), 43 Ohio St.3d 67, 68–70, 538 N.E.2d 1025; *State v. Cooney* (1997), 124 Ohio App.3d 570, 572–573, 706 N.E.2d 854.

{¶ 9} Nevertheless, the record shows that continuances granted on Brewster's motion and reasonable continuances granted by the court sufficiently tolled the time so that Brewster was tried within 270 days. Consequently, the court did not

err in overruling his motion to dismiss for lack of a speedy trial, and we overrule his first assignment of error.

## II. Severance

{¶ 10} In his second assignment of error, Brewster argues that the trial court erred by overruling his motion to sever his trial from that of his brother, Garry. He argues that Garry, who represented himself, engaged in improper behavior that prejudiced him and denied him the right to a fair trial. This assignment of error is not well taken.

{¶ 11} Crim.R. 8(B) provides that "[t]wo or more defendants may be charged in the same indictment, information or complaint if they are alleged to have participated in the same act or transaction or in the same acts or transactions constituting an offense or offenses, or in the same course of criminal conduct." Joinder of defendants and the avoidance of multiple trials are favored in the law because they "conserv[e] judicial and prosecutorial time, lesse[n] the not inconsiderable expenses of multiple trials, diminis[h] inconvenience to witnesses, and minimiz[e] the possibility of incongruous results in successive trials before different juries." *State v. Thomas* (1980), 61 Ohio St.2d 223, 225, 15 O.O.3d 234, 400 N.E.2d 401; *State v. Daniels* (1993), 92 Ohio App.3d 473, 484, 636 N.E.2d 336.

{¶ 12} If a defendant is prejudiced by joinder with other defendants at trial, the court shall grant a severance or provide such other relief as justice requires. Crim.R. 14; *Thomas*, supra, 61 Ohio St.2d at 226, 15 O.O.3d 234, 400 N.E.2d 401. A defendant who challenges on appeal the trial court's denial of his motion for a separate trial bears the burden of showing that his rights were actually prejudiced. *Daniels*, supra, 92 Ohio App.3d at 484–485, 636 N.E.2d 336; *State v. Kuehne* (Apr. 22, 1992), 1st Dist. Nos. C–910454 and C–910455, 1992 WL 81281. Absent an abuse of discretion, an appellate court will not reverse a trial court's decision on severance. *State v. Torres* (1981), 66 Ohio St.2d 340, 343, 20 O.O.3d 313, 421 N.E.2d 1288; *Daniels*, supra, 92 Ohio App.3d at 484, 636 N.E.2d 336.

{¶ 13} In this case, the state alleged that Brewster and Garry had engaged in the same criminal acts. See *Thomas*, supra, 61 Ohio St.2d at 225, 15 O.O.3d 234, 400 N.E.2d 401. Compare *Kuehne*, supra (the events that led to the arrest of the co-defendants were removed, both factually and in time, from one another). The trial in this case involved numerous witnesses and exhibits. Separate trials would have involved substantial time and expense, as well as inconvenience to the witnesses.

{¶ 14} Further, Brewster has not demonstrated substantial prejudice that denied him a fair trial. See *United States v. Lopez* (C.A.6, 2002), 309 F.3d 966, 971–972. He contends that the trial became "the Garry show" and that his name

was barely mentioned. The record does not support that contention. The evidence showed that Brewster was an active participant in the forgery scheme. It is also clear enough that the jury would not have had difficulty separating the evidence as to the two defendants. Although Garry asked some improper questions and engaged in one questionable experiment, his conduct did not rise to a level that denied Brewster a fair trial. The trial court's decision to deny Brewster's motion to sever was not so arbitrary, unreasonable, or unconscionable as to connote an abuse of discretion. Accordingly, we overrule Brewster's second assignment of error. See *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144.

### III. Fourth Amendment Issues

{¶ 15} In his third assignment of error, Brewster contends that the trial court erred in overruling his motion to suppress. He argues that the police used an unwarranted entry into a hotel room occupied by Brewster and Garry to gather evidence to support a search warrant. He also argues that the police opened locked fireboxes and other containers without a separate warrant to search those containers. This assignment of error is not well taken.

{¶ 16} The record shows that the police received a tip from a confidential informant, whom they knew to be reliable, that Brewster and Garry were staying in a hotel room in Springdale, Ohio, and were making counterfeit checks and identifications. The informant also stated that they used fake names and identifications and that they were wanted in other jurisdictions. The police officers confirmed that open warrants existed for both of them.

{¶ 17} The officers obtained a photograph of Garry and a description of Brewster. They spoke with hotel employees, who stated that Garry was paying for a room and that he was in the company of another individual who matched Brewster's description. The employees also stated that Garry and Brewster were driving a red compact car.

{¶ 18} The officers watched the room from a hotel across the street. They saw two individuals get out of a red compact car. One of these individuals was carrying a black briefcase that could be used to carry a laptop computer. One of the individuals looked like Garry in the photograph and the other matched the description of Brewster.

{¶ 19} As the officers approached the hotel room, they walked past an open window and saw an individual they believed to be Garry lying on the bed, alongside a number of checks. They also saw computer equipment in the room.

{¶ 20} Detective Jerrod Livermore knocked on the door and Brewster answered it. As he opened it, Garry rose from the bed and went toward the

bathroom. After the detective identified himself, Brewster voluntarily let him in the room.

{¶ 21} Livermore and another officer walked approximately three to four feet inside the room and told the occupants why they were there. Garry said his name was Ronald Brewster but refused to provide identification or to give any other information. He told the officers, "I don't want you here." He also attempted to go back towards the bathroom, but the officers stopped him. Brewster said that his name was Larry Nowlin but that he did not have any identification, as he had left it in the car. The officers noticed that the checks on the bed had disappeared.

{¶ 22} At that time, the officers placed them both under arrest. One officer did a quick sweep of the main room and the bathroom to make sure no one else was hiding there. The officer saw pieces of paper floating in the toilet. Livermore removed them and placed them on a counter to dry, without examining them.

{¶ 23} Then, the officers had a hotel employee secure the door to the room and left an officer to guard it. They obtained a warrant to search the room. During the search, they seized several locked containers. They opened them later at the police station and discovered counterfeit checks and other evidence inside.

{¶ 24} The occupants of a hotel room have a reasonable expectation of privacy that the Fourth Amendment protects. *Stoner v. California* (1964), 376 U.S. 483, 490, 84 S.Ct. 889, 11 L.Ed.2d 856; *State v. Smith* (1991), 73 Ohio App.3d 471, 475, 597 N.E.2d 1132; *State v. Day* (1976), 50 Ohio App.2d 315, 319, 4 O.O.3d 269, 362 N.E.2d 1253. Warrantless searches and seizures are unreasonable under the Fourth Amendment except for a few well-delineated exceptions. *Horton v. California* (1990), 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112; *State v. Willoughby* (1992), 81 Ohio App.3d 562, 567, 611 N.E.2d 937.

{¶ 25} First, Brewster contends that the police officers who initially approached his hotel room had no arrest or search warrant. This argument ignores the evidence in the record that open warrants existed for both Michael and Garry Brewster. The warrants gave the officers authority to arrest both Michael and Garry Brewster wherever they found them. The officers did not need to have actual warrants in their possession. See Crim.R. 4(D); *State v. Thomas* (Nov. 19, 1997), 9th Dist. No. 96CA006504, 1997 WL 760927; *State v. Bishop* (Mar. 20, 1997), 8th Dist. No. 70177, 1997 WL 127183. Though the individuals in the hotel room gave false names, the officers had probable cause to believe that they were Michael and Garry Brewster. Since arrest warrants existed, the officers had authority to enter the hotel room to arrest the Brewsters. See *State v. Pierson* (1998), 128 Ohio App.3d 255, 258, 714 N.E.2d 461;

*State v. Campana* (1996), 112 Ohio App.3d 297, 302, 678 N.E.2d 626. Compare *Steagald v. United States* (1981), 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38; *Payton v. New York* (1980), 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639.

{¶ 26} Even if no warrants had existed, one exception to the warrant requirement is a search or seizure conducted with consent. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854; *State v. Posey* (1988), 40 Ohio St.3d 420, 427, 534 N.E.2d 61. In this case, the evidence showed that the officers knocked on the door of the hotel room, that they identified themselves and their purpose, and that Brewster freely and voluntarily opened the door and let the officers inside. Consequently, the officers' initial entry into the hotel room did not violate the Fourth Amendment. See *Posey*, supra, 40 Ohio St.3d at 427, 534 N.E.2d 61; *State v. Thompson* (1987), 33 Ohio St.3d 1, 7–8, 514 N.E.2d 407; *State v. Kruger*, 9th Dist. No. 20830, 2002-Ohio-1750, 2002 WL 570322.

{¶ 27} Next, Brewster contends that, after his arrest, the police conducted a warrantless search of the hotel room. The record shows that the officers, for their own safety, conducted a protective sweep to make sure that no one else was in the hotel room, and, while conducting that sweep, found pieces of paper in the toilet.

{¶ 28} The risk of danger in the context of an arrest in the home or otherwise on an "adversary's turf" is greater than in an on-the-street encounter. Therefore, the officers making an arrest may take reasonable steps to ensure their own safety. *Maryland v. Buie* (1990), 494 U.S. 325, 333–334, 110 S.Ct. 1093, 108 L.Ed.2d 276. The Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home arrest, when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene. Id. at 336–337, 110 S.Ct. 1093, 108 L.Ed.2d 276.

{¶ 29} In this case, when the officers approached the hotel room, they saw an individual they believed to be Garry jump off the bed and run to the bathroom. After they had entered the room, Garry became uncooperative and attempted again to go into the bathroom. Under the circumstances, the officers had a reasonable belief that another individual could have been hiding in the bathroom and could have posed a danger to those on the arrest scene. Therefore, the police were justified in conducting a protective sweep without a warrant. See *State v. Sutton*, 7th Dist. No. 01–CA–181, 2002-Ohio-6901, 2002 WL 31813086, at ¶ 19; *State v. Walsson* (May 6, 1996), 12th Dist. No. CA95–09–063, 1996 WL 227479.

{¶ 30} Additionally, the protective sweep was properly limited in scope. It consisted of a cursory visual inspection of the bathroom, the place in which a person might have been hiding, and lasted no longer than necessary to dispel the reasonable suspicion of danger. See *Buie*, supra, 494 U.S. at 335–336, 110 S.Ct. 1093, 108 L.Ed.2d 276; *State v. Lyons* (1992), 83 Ohio App.3d 525, 532–535, 615 N.E.2d 310; *Walsson*, supra. Consequently, we hold that the protective sweep conducted without a warrant did not violate Brewster's Fourth Amendment rights.

{¶ 31} While conducting the protective sweep, the officers found pieces of what looked like a check floating in the toilet. They removed the pieces and set them on the counter. Brewster contends that this warrantless seizure violated the Fourth Amendment. We disagree. The officers' actions fell under the exigent-circumstances exception to the warrant requirement, which permits officers to act quickly, without a warrant, to prevent the imminent destruction of evidence. See *State v. Moore* (2000), 90 Ohio St.3d 47, 52, 734 N.E.2d 804; *State v. McGettrick* (1988), 40 Ohio App.3d 25, 32–33, 531 N.E.2d 755; *State v. Namay* (2000), 106 Ohio Misc.2d 72, 75–79, 735 N.E.2d 526; *State v. Hatcher* (Sept. 3, 1999), 1st Dist. No. C–980938, 1999 WL 682630.

{¶ 32} A warrantless search or seizure mandated by exigent circumstances must be "strictly circumscribed by the exigencies which justify its initiation." *State v. Applegate* (1994), 68 Ohio St.3d 348, 350, 626 N.E.2d 942; *Namay*, supra, 106 Ohio Misc.2d at 80, 735 N.E.2d 526; *Hatcher*, supra. Here, the officers removed the pieces of paper from the toilet without examining them. They did what was necessary to preserve the evidence, and no more. They inspected the pieces of paper only after obtaining a warrant. Therefore, their actions did not violate the Fourth Amendment.

{¶ 33} Finally, Brewster argues that while searching the hotel room pursuant to the search warrant, officers seized and later opened several fire safes without a separate search warrant for those closed containers. He relies upon *United States v. Chadwick* (1977), 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538, in which the United States Supreme Court held that a warrantless search of a locked footlocker seized without a warrant from an automobile violated the Fourth Amendment. The court stated that the automobile exception to the warrant requirement did not extend to the locked footlocker that was safely in police possession.

{¶ 34} We do not find *Chadwick* to be dispositive of this case. First, Chadwick's continued viability is in doubt because the Supreme Court overruled it in part in *California v. Acevedo* (1991), 500 U.S. 565, 576, 111 S.Ct. 1982, 114 L.Ed.2d 619. Second, *Chadwick* is distinguishable from the present case. This

case did not involve a container seized during a warrantless search but a container discovered during the search of a hotel room pursuant to a search warrant. See *State v. Bowling* (C.P.1984), 22 Ohio Misc.2d 30, 31, 22 OBR 338, 489 N.E.2d 1076.

{¶ 35} In discussing the scope of a search pursuant to a search warrant, the Supreme Court has stated, "A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found. A warrant to open a footlocker to search for marihuana would also authorize the opening of packages found inside. A warrant to search a vehicle would support a search of every part of the vehicle that might contain the object of the search. When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand." *United States v. Ross* (1982), 456 U.S. at 820–821, 102 S.Ct. 2157, 72 L.Ed.2d 572.

{¶ 36} The warrant in this case permitted the police officers to search for "equipment or articles used in the manufacturing or reproduction of negotiable items such as checks," including computer equipment and software, receipts, ledgers, and personal papers that showed control, ownership or distribution of contraband, currency, weapons, or money transfers. The fire safes that the police officers seized could easily have contained documents or other things used in the manufacturing, reproduction or use of forged checks. Consequently, they fell within the scope of the search warrant, and the police officers did not have to obtain an additional warrant to open the safes. See *State v. Eyer* (1991), 74 Ohio App.3d 361, 364–365, 598 N.E.2d 1242; *McGettrick,* supra, 40 Ohio App.3d at 30–31, 531 N.E.2d 755; *State v. Schultz* (1985), 23 Ohio App.3d 130, 133–134, 23 OBR 242, 491 N.E.2d 735.

{¶ 37} Under the circumstances, we cannot hold that Brewster's Fourth Amendment rights were violated. Consequently, the trial court did not err in overruling his motion to suppress, and we overrule his third assignment of error.

## IV. Motion for Mistrial

{¶ 38} In his fourth assignment of error, Brewster argues that the trial court erred in failing to grant his motion for a mistrial. He argues that the trial court allowed prejudicial evidence of other bad acts into evidence over his objection

with no limiting instruction. He also argues that Garry's improper conduct and the prosecutor's improper comments denied him a fair trial. This assignment of error is not well taken.

{¶ 39} The decision whether to grant a mistrial lies within the trial court's discretion. An appellate court will not reverse its decision granting or denying a mistrial absent an abuse of discretion. *State v. Sage* (1987), 31 Ohio St.3d 173, 182, 31 OBR 375, 510 N.E.2d 343; *State v. McNeel* (May 22, 1998), 1st Dist. No. C–960980, 1998 WL 258450. A trial court should not order a mistrial merely because an error or irregularity has occurred, unless it affects the defendant's substantial rights. The court should declare a mistrial "only when the ends of justice so require and when a fair trial is no longer possible." *State v. Broe*, 1st Dist. No. C–020521, 2003-Ohio-3054, 2003 WL 21360454, at ¶ 36; *McNeel*, supra.

{¶ 40} The other-acts evidence of which Brewster complains was admitted to show that Brewster had knowingly engaged in a forgery operation with his brother. It showed opportunity, intent, preparation, and planning to utter the forged checks. Consequently, it was admissible under Evid.R. 404(B), and the trial court did not abuse its discretion in failing to declare a mistrial on that basis. See *State v. Shedrick* (1991), 61 Ohio St.3d 331, 337, 574 N.E.2d 1065; *State v. Coleman* (1989), 45 Ohio St.3d 298, 299–300, 544 N.E.2d 622; *Hirsch*, supra, 129 Ohio App.3d at 306–307, 717 N.E.2d 789.

{¶ 41} Further, we cannot say that any alleged prosecutorial misconduct was so egregious as to deny Brewster a fair trial. See *State v. Keenan* (1993), 66 Ohio St.3d 402, 405, 613 N.E.2d 203; *Hirsch*, supra, 129 Ohio App.3d at 309–310, 717 N.E.2d 789. To the contrary, the remarks of which Brewster complains were, for the most part, fair comments on the evidence. See *State v. Tibbetts* (2001), 92 Ohio St.3d 146, 168, 749 N.E.2d 226. Also, none of the alleged errors or irregularities caused by Garry's self-representation was so egregious as to affect Brewster's substantial rights.

{¶ 42} Therefore, we cannot hold that the trial court's decision denying Brewster's motion for a mistrial was so arbitrary, unreasonable, or unconscionable as to connote an abuse of discretion. See *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144; *McNeel*, supra. We overrule Brewster's fourth assignment of error.

## V. Complicity

{¶ 43} In his eighth assignment of error, Brewster states that the trial court erred in instructing the jury on complicity. He argues that the only connection between him and the crime was his presence in the hotel room.

Therefore, the evidence was insufficient to support a charge on complicity. This assignment of error is not well taken.

{¶ 44} An accomplice is an individual who can be indicted and punished for complicity, and accomplices can also be prosecuted and punished as if they were the principal offenders. R.C. 2923.03(F); *State v. Coleman* (1988), 37 Ohio St.3d 286, 525 N.E.2d 792, paragraph two of the syllabus; *State v. Woods* (1983), 13 Ohio App.3d 49, 50–51, 13 OBR 53, 468 N.E.2d 121. Ohio's complicity statute states that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense." R.C. 2923.03(A)(2).

{¶ 45} To support a conviction for complicity by aiding and abetting, the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. *State v. Johnson* (2001), 93 Ohio St.3d 240, 754 N.E.2d 796, syllabus. Mere presence of an individual at the scene of the crime is not sufficient to prove that he or she was an accomplice. But aiding and abetting may be demonstrated by direct or circumstantial evidence. It can be inferred from "presence, companionship and conduct before and after the offense is committed." Id. at 245, 754 N.E.2d 796; *State v. Gray* (Aug. 27, 1999), 1st Dist. No. C–980946, 1999 WL 650793. When the jury can reasonably find from the evidence presented at trial that the defendant acted as an aider and abettor, a jury instruction on complicity is proper. *State v. Perryman* (1976), 49 Ohio St.2d 14, 3 O.O.3d 8, 358 N.E.2d 1040, paragraph five of the syllabus, vacated as to death penalty (1978), 438 U.S. 911, 98 S.Ct. 3136, 57 L.Ed.2d 1156; *State v. Haile* (Sept. 27, 1995), 1st Dist. No. C–940690, 1995 WL 566620.

{¶ 46} The record demonstrates that Brewster rented a hotel room in the name of Larry Nowlin, the false name that he had given the police. Brewster also carried in his wallet false identification identifying himself as Larry Nowlin. Brewster was present in the hotel room when police officers saw checks on the bed in plain sight. In the room, police found numerous forged checks in the names of various companies. The police officers also found partially completed and blank checks, partially completed and blank identification cards, copies of signatures from checks, lists of check-cashing locations, and computer equipment and software for printing checks.

{¶ 47} This evidence showed more than mere presence. It supported the inference that Brewster was an aider and abettor in the forgery operation. Consequently, the state presented sufficient evidence to support an instruction on complicity, and the trial court did not err in giving such an instruction. Accordingly, we overrule Brewster's eighth assignment of error.

## VI. Weight and Sufficiency

{¶ 48} In his fifth assignment of error, Brewster argues that the state presented insufficient evidence to support his convictions. In his sixth assignment of error, he contends that the trial court erred in overruling his Crim.R. 29 motion for a judgment of acquittal, which is the same as a claim that the evidence was insufficient to support the convictions. *State v. Ritze,* 154 Ohio App.3d 133, 2003-Ohio-4580, 796 N.E.2d 566, ¶ 12; *State v. Cedeno* (Oct. 23, 1998), 1st Dist. No. C–970465, 1998 WL 735353. Because these assignments of error involve the same issue, we consider them together. They are not well taken.

{¶ 49} Brewster was convicted of 30 counts of forgery pursuant to R.C. 2913.31(A)(2), which provides that "[n]o person, with a purpose to defraud, or knowing that the person is facilitating a fraud, shall * * * [f]orge any writing so that it purports to be genuine when it actually is spurious, or to be the act of another who did not authorize that act, or to have been executed at a time or place or with terms different from what in fact was the case, or to be a copy of any original when no such original existed." He was also convicted of one count of possessing criminal tools pursuant to R.C. 2923.24(A), which provides that "[n]o person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally."

{¶ 50} As is evident from our discussion of the previous assignments of error, the record shows that the state's evidence, when viewed in a light most favorable to the prosecution, could have convinced a reasonable trier of fact that Brewster, in complicity with Garry, committed 30 separate acts of forgery pursuant to R.C. 2913.31(A)(2). Therefore, the evidence was sufficient to support those convictions. See *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus; *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus; *State v. Simones* (1971), 27 Ohio App.2d 9, 15–16, 56 O.O.2d 198, 272 N.E.2d 146.

{¶ 51} Further, the state's evidence, when viewed in a light most favor to the prosecution, could have convinced a reasonable trier of fact that Brewster was in possession of criminal tools pursuant to R.C. 2923.24(A). Therefore, the evidence was sufficient to support his conviction for that offense. See *Jenks,* supra, at paragraph two of the syllabus; *Bridgeman,* supra, at syllabus; *State v. Tolbert* (1996), 116 Ohio App.3d 86, 91–92, 686 N.E.2d 1375. Accordingly, we overrule his fifth and sixth assignments of error.

{¶ 52} In this ninth assignment of error, Brewster contends that his convictions were against the manifest weight of the evidence. Even when the evidence is sufficient to support a conviction, an appellate court may still reverse the conviction as being against the manifest weight of the evidence. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541. But, after reviewing

the record, we cannot hold that the jury clearly lost its way and created such a manifest miscarriage of justice that we must reverse Brewster's convictions and order a new trial. Therefore, his convictions were not against the manifest weight of the evidence. We overrule his ninth assignment of error. Id.; *State v. Allen* (1990), 69 Ohio App.3d 366, 374, 590 N.E.2d 1272.

## VII.   Sentencing

{¶ 53} In his seventh assignment of error, Brewster contends that the trial court erred in imposing consecutive sentences. The record demonstrates that the trial court failed to make the findings necessary to support consecutive sentences and to give its reasons supporting those findings. See *State v. Comer*, 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473, paragraph one of the syllabus. Consequently, we sustain Brewster's eighth assignment of error. We vacate the consecutive sentences and remand this case to the trial court for resentencing. See id. at ¶ 23. In all other respects, we affirm the trial court's judgment.

Judgment affirmed in part,
reversed in part
and cause remanded.

SUNDERMANN, P.J., and HILDEBRANDT, J., concur.