OPINION *Page 2 
{¶ 1} Plaintiff-appellant, State of Ohio, appeals from the March 13, 2008, and March 19, 2008, Judgment Entries of the Stark County Court of Common Pleas granting defendant-appellee Lonnie Richardson's Motion to Suppress.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On November 28, 2007, the Stark County Grand Jury indicted appellee on one count of participating in a criminal gang in violation of R.C. 2923.42(A), a felony of the second degree, one count of trafficking in cocaine in violation of R.C. 2925.03(A)(2)(C)(4)(c), a felony of the third degree, one count of having weapons while under disability in violation of R.C. 2923.13(A)(2) and/or (A)(3), a felony of the third degree, and one count of possession of cocaine in violation of R.C. 2925.11(A)(C)(4)(b), a felony of the fourth degree. At his arraignment on November 30, 2007, appellee entered a plea of not guilty to the charges.
 {¶ 3} On December 20, 2007, appellee filed a Motion in Limine. Appellee, in his motion, argued, in part, that letters seized from the house where appellee was arrested should be excluded at trial because they contained inadmissible hearsay and because the State would not be able to properly authenticate the letters. The letters had been seized from a closet during execution of a search warrant and were written to appellee by a man by the name of Larry Grimes.
 {¶ 4} A hearing on appellee's motion was held on January 25, 2008. At the hearing, appellee's counsel orally supplemented the Motion in Limine and argued that the letters were outside of the scope of the search warrant. *Page 3 
 {¶ 5} Pursuant to a Judgment Entry filed on March 13, 2008, the trial court granted appellee's Motion in Limine and ordered that the letters be excluded from all phases of the trial. Thereafter, on March 19, 2008, the trial court filed a Nunc Pro Tunc Judgment Entry. The trial court, in such entry, indicated that appellee's Motion in Limine was argued as a Motion to Suppress and that it was treating "defense counsel's argument to exclude the letters based on their discovery exceeding the scope of the search warrant as an oral motion to suppress." The trial court then granted the oral Motion to Suppress and ordered that the letters be excluded from all phases of the trial.
 {¶ 6} Appellant State of Ohio now raises the following assignment of error on appeal:[1]
 {¶ 7} "THE COURT ERRED IN SUPPRESSING LETTERS ADDRESSED TO THE DEFENDANT THAT CONTAINED GANG REFERENCES WHICH WERE FOUND DURING THE EXECUTION OF A SEARCH WARRANT WHICH PERMITTED POLICE TO SEARCH FOR GANG PARAPHERNALIA; GANG WRITINGS; AND ANY WRITING THAT INCLUDES GANG SYMBOLS, SIGNS, OR GRAFFITI."
 I {¶ 8} Appellant, in its sole assignment of error, argues that the trial court erred in granting the Motion to Suppress. We agree.
 {¶ 9} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether the findings of fact are against the manifest weight of the evidence. See State v. Fanning *Page 4 
(1982) 1 Ohio St.3d 19, 437 N.E.2d 583; State v. Klein (1991),73 Ohio App.3d 486, 597 N.E.2d 1141; State v. Guysinger (1993),86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue that the trial court failed to apply the appropriate test or correct law to the findings of fact. See State v. Williams (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141, overruled on other grounds. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue that the trial court incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93,96, 641 N.E.2d 1172; State v. Claytor (1993), 85 Ohio App.3d 623, 627,620 N.E.2d 906; and Guysinger, supra.
 {¶ 10} At issue in the case sub judice is whether the trial court erred in suppressing the letters that were found during the execution of a search warrant. The letters were found in a padlocked closet along with drugs and a handgun and were in envelopes addressed to appellee from a prison inmate named Larry Grimes. Grimes' name and prisoner identification number were on the envelopes, which was identified as prisoner mail. Several of the letters contained references to past, present and future illegal activities as well as gang references.
 {¶ 11} The trial court, in the case sub judice, held that the letters were not in "plain view" and, on such basis, ordered the same suppressed.
 {¶ 12} However, we find that the letters fell within the scope of the search warrant and that the trial court, therefore, erred in ordering their suppression. The *Page 5 
search warrant in this case authorized the police to search for the following, among other items:
 {¶ 13} "Gang paraphernalia, gang writings including rap lyrics that contains gang references, any writing that includes gang symbols signs or graffiti, gang rosters and contact information in both electronic and paper format."
 {¶ 14} The permissible scope of a search is governed by the terms set forth in the search warrant. See Horton v. California (1990),496 U.S. 128, 140, 110 S.Ct. 2301, 110 L.Ed.2d 112. "If the scope of the search exceeds that permitted by the terms of a validly issued warrant or the character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional without more." Id.
 {¶ 15} Appellee argues that the trial court did not err in granting the Motion to Suppress because the search warrant did not authorize the police to seize letters. Appellee further notes that the envelopes containing the letters did not contain gang references, graffiti or symbols. According to appellee, "[h]ad the envelopes contained gang references, graffiti or symbols, the letters would have fallen into the items listed within the warrant."
 {¶ 16} In United States v. Ross (1982), 456 U.S. 798, 1012 S.Ct. 2157 the Supreme Court held: "A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found* * *This rule applies equally to all containers, as indeed we believe it must." Id. at *Page 6 
820-822, 102 S.Ct. at 2170-71. Thus, under Ross, any container that is the subject of a validly issued warrant may be searched if it is reasonable to believe that the container could conceal items of the kind portrayed in the warrant.
 {¶ 17} In State v. Seibert, Tusc. Case No. 2004-AP-060048, 2005-Ohio-275, this Court cited Ross, supra., in holding that an officer who was conducting a search for items related to child pornography did not exceed the scope of the search warrant by opening drawers and a container in which cocaine was found. This Court, in Seibert, specifically held, in relevant part, as follows: "The drawers could easily have contained `floppy disks, cassette or other tapes, CD's, and any other permanent or transient storage devices; records or documents contained on paper in handwritten, typed, photocopied, or printed form, or stored on any other type of media . . . `Detective Bickford testified at the hearing on appellant's motion to suppress that some of the external storage devices can be as small as a `remote of a key chain.' (T. at 11). Consequently, the drawer fell within the scope of the search warrant, and the police officers did not have to obtain an additional warrant to open the drawer." Id. at paragraph 18.
 {¶ 18} In State v. Brewster, 157 Ohio App.3d 342, 2004-Ohio-2722,811 N.E.2d 162, the appellant, who was convicted of forgery and possession of criminal tools, appealed. The appellant argued, in part, that while searching his hotel room pursuant to a search warrant, police officers had improperly seized and opened fire safes without a separate search warrant. The court, however, held that the fire safes found in a hotel room fell within the scope of a warrant to search the hotel room. The search warrant in such case permitted police officers to search for equipment or articles used in manufacturing or reproducing negotiable items, including software, receipts and *Page 7 
personal papers. The court held that fire safes could have contained documents or other things used in manufacturing, reproducing, or using forged checks. See, also, State v. Jiwad, Summit App. No. 17820,1997 WL 22593. In Jiwad, the appellee was a suspect in a rape. A search warrant in such case authorized the police to search his apartment for specified items, including a tube of KY Jelly and pieces of rope. During execution of the search warrant, the officers broke the lock on a two foot by four foot long black box and found items inside related to other offenses. After the trial court granted the appellee's Motion to Suppress the evidence taken from the black box, the State appealed. In reversing the judgment of the trial court, the court, in Jiwad stated in relevant part, as follows: "[P]olice were well within the scope of the search warrant in opening the box. `Given the nature of some of the items listed in the warrant * * * [i]t was `reasonable to believe that the container could conceal items of the kind portrayed in the warrant.'United States v. Doherty (CA. 1, 1989), 867 F.2d 47, 66, quotingUnited States v. Gray (C.A. 1, 1987), 814 F.2d 49, 51." Id at 3.
 {¶ 19} As is stated above, the search warrant in the case sub judice authorized the police to search for the following:
 {¶ 20} "Gang paraphernalia, gang writings including rap lyrics that contains gang references, any writing that includes gang symbols signs or graffiti, gang rosters and contact information in both electronic and paper format." (Emphasis added).
 {¶ 21} While appellee argues that the search warrant did not list "letters" as an item to be seized, we note that the dictionary defines the word "letter" as including "a direct or personal written . . . message addressed to a person or organization." (Emphasis added). See Merriam Webster's Collegiate Dictionary (Tenth Edition 1993). *Page 8 
Clearly, a writing falls within such definition. While appellee also argues that the envelopes containing the letters did not contain "gang paraphernalia, gang writings . . .", envelopes are containers that frequently contain letters. As noted by appellant in its brief, "[t]he primary purpose of an envelope is to hold writings. When viewing an envelope, even a blank envelope, a reasonable person could conclude that there might be [a] writing contained inside." Moreover, in the case sub judice, the envelope was not blank, but rather was addressed to appellee from an inmate named Larry Grimes.
 {¶ 22} Based on the foregoing, we find that the letters fell within the scope of the search warrant and that the trial court erred in granting appellee's Motion to Suppress the same.
 {¶ 23} Appellant's sole assignment of error is, therefore, sustained.
 {¶ 24} Accordingly, the judgment of the Stark County Court of Common Pleas is reversed and this matter is remanded to the trial court for further proceedings.
Edwards, J., Hoffman, P.J., and Farmer, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is reversed and this matter is remanded to the trial court for further proceedings. Costs assessed to appellee.
[1] The State filed its appeal pursuant to R.C. 2945.67(A) and Crim. R. 12(K). *Page 1