OPINION
{¶ 1} Defendant-appellant, Willie Russ, was originally indicted for one count of attempted murder and two counts of felonious assault relating to the shooting of Albert Crutchfield, as well as aggravated murder relating to the death of Thomas Baskin. All of these counts had firearm specifications under R.C. 2941.145. Following a bench trial, he was convicted of voluntary manslaughter under R.C. 2903.03, attempted voluntary manslaughter under R.C. 2903.03 and 2923.02(A), and one count of felonious assault under R.C. 2903.11(A)(1), along with a firearm specification for each offense. Russ now appeals those convictions. We affirm the trial court's findings of guilt, but vacate the sentences imposed and remand the case for resentencing.
 {¶ 2} Crutchfield testified that in the early morning hours of April 24, 2002, he and Baskin decided to go to the Queen Ann Bar on Central Avenue. Crutchfield left his loaded .38-caliber revolver in the glove compartment before entering the bar. It was crowded and Baskin bumped into Russ, whom Baskin and Crutchfield had known for a long time. Neither Russ nor Baskin would move aside, and "they had a couple of words." Crutchfield stated that he was not involved and that he just stood there during the altercation. Finally, a mutual friend told Russ and Baskin to "chill out," and they went around each other.
 {¶ 3} Cozetta Ballard testified that Russ appeared angry over the incident. She stated that he went to the pay phone in the bar and made a call. She heard him say, "I'm about to merk that nigger." When asked to define the term "merk," she stated, "Somebody going to be hurt basically."
 {¶ 4} Baskin went to the bar and got a drink. Upset over the incident, Crutchfield left the building, went to his car, and got his gun. He fired three shots in the air to "let off steam." He reloaded the gun, put it in the waistband of his pants, and went back inside the bar. He and Baskin stayed at the bar, talking to friends until closing time.
 {¶ 5} As Crutchfield and Baskin were leaving, Russ was sitting in his car and called the two men over. Russ initially seemed to be looking for an argument, but, according to Crutchfield, Baskin "was not trying to play into it." Eventually Russ seemed to calm down, and he and Baskin continued to talk. Just then, Russ's friends drove up in a yellow Cadillac. They stopped, shook hands with everyone, and drove around the corner.
 {¶ 6} Crutchfield testified that as he and Baskin were about to leave, Russ said that he was having car trouble and asked for a ride home. Crutchfield reluctantly agreed. Russ got in the back seat of Crutchfield's car. The front seat consisted of two bucket seats, separated by a console. Crutchfield sat in the driver's seat, and Baskin sat in the passenger seat. Crutchfield handed Baskin his gun and asked him to put it in the glove compartment. Russ wanted to see the gun, so Baskin handed it to him.
 {¶ 7} As Crutchfield started the car, he heard gunshots. He stated that initially he did not pay much attention to them because he was "so used to hearing gunshots." But when he went to step on the car's gas pedal, his legs would not work. He felt a burning sensation in his lower back. He also started feeling dizzy, and he realized that he had been shot.
 {¶ 8} Crutchfield looked over at Baskin, who was looking back at Russ and saying, "What the fuck are you doing?" The shooting continued, and both Baskin and Crutchfield fell out of the car. Crutchfield specifically remembered shots coming from the back seat as well as from outside the car.
 {¶ 9} Firefighters arriving on the scene found Baskin dead in the street, surrounded by bullet casings from a .380-caliber semiautomatic weapon. He was shot at least nine times. The bullets in his body came from both .380 and 9-mm semiautomatic handguns, although police found no 9-mm casings on the ground around him. The lethal shot was a 9-mm bullet that entered the back of the head and lodged in the front of his skull. An autopsy revealed powder marks on Baskin's head around the bullet hole and that the bullet was fired from an "intermediate range."
 {¶ 10} The firefighters found Crutchfield barely alive by the car, some distance away from Baskin. Several bullet casings from a 9-mm semiautomatic weapon were found around the car. Two spent bullets from a 9-mm handgun were located behind the car. Additionally, a bullet from a .38 revolver was found on the front seat of the car. Crutchfield was shot in the chest, abdomen, and leg. He endured numerous surgeries. Doctor left some bullets in his body, but they did recover two from a 9-mm handgun. Despite the discovery of numerous casings and bullets, police never recovered any of the guns used in the shootings.
 {¶ 11} Russ presented an alibi defense. His witnesses testified that it was Crutchfield who had been involved in the altercation with Russ in the bar. They also stated that Russ had left the bar before the shooting began and that he was in the process of taking several individuals home to various parts of town at the time the shootings occurred.
 {¶ 12} In his first assignment of error, Russ contends that the evidence was insufficient to support his convictions. He argues that the evidence showed that Crutchfield and Baskin were shot by other gunmen and not by the gun that Baskin had handed to Russ. This assignment of error is not well taken.
 {¶ 13} An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether the evidence, if believed, would have convinced the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.[1]
 {¶ 14} Although he was indicted for aggravated murder relating to the death of Baskin, Russ was convicted of voluntary manslaughter, an offense of inferior degree to murder.[2] R.C. 2903.03(A) provides, "No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into deadly force, shall knowingly cause the death of another[.]"
 {¶ 15} Because courts have held that the mitigating circumstances of sudden passion or rage brought about by serious provocation are presumed to benefit the defendant, the essential elements of voluntary manslaughter are that no person shall knowingly cause the death of another.[3] A person acts knowingly, "regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."[4]
 {¶ 16} Russ was also convicted of attempted voluntary manslaughter and felonious assault on Crutchfield. R.C. 2923.02(A) defines an attempt. It provides, "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." R.C. 2903.11(A)(1) defines felonious assault. It states, "No person shall knowingly * * * cause serious physical harm to another[.]"
 {¶ 17} Russ argues that the evidence did not show that Russ himself had killed Baskin and injured Crutchfield, but that the evidence "overwhelmingly points to other gunmen." This argument fails because the evidence demonstrated that Russ had aided and abetted those who did fire the actual shots. Ohio's complicity statute covers accomplices who aid and abet the principal offender.[5] Accomplices can be prosecuted and punished as if they were the principal offenders.[6]
 {¶ 18} To support a conviction for complicity by aiding and abetting, the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal.[7] The state may show aiding and abetting by direct or circumstantial evidence. It can be inferred from "presence, companionship and conduct before and after the offense is committed "[8] The state need not prove the identity of the principal to convict an offender of complicity.[9]
 {¶ 19} The evidence in this case showed that a confrontation occurred in the bar between Crutchfield, Baskin, and Russ, who had all known each other a long time.Though Crutchfield minimized the confrontation and his participation in it, the testimony of other witnesses supported the inference that it was more significant. Subsequently, a witness heard Russ call someone on the phone and say, "I'm going to merk that nigger."
 {¶ 20} As Crutchfield and Baskin were leaving the bar and talking with Russ, Russ's friends drove up, greeted the three of them, and then drove around the corner. Russ managed to get inside the car that Crutchfield was driving and then to get his hands on Crutchfield's .38 revolver. Suddenly, shots went off both inside and outside the car, killing Baskin and nearly killing Crutchfield. Ballistics evidence showed that several guns were involved in the shooting, including a .38 revolver.
 {¶ 21} Under the circumstances, the state's evidence, when viewed in a light most favorable to the prosecution, could have convinced a reasonable trier of fact that Russ had aided and abetted others in shooting both Baskin and Crutchfield following the confrontation in the bar. Thus, a rational trier of fact could have found beyond a reasonable doubt that the state had proved all the elements of voluntary manslaughter, attempted voluntary manslaughter, and felonious assault. The evidence was therefore sufficient to support Russ's convictions, and we overrule his first assignment of error.
 {¶ 22} In his second assignment of error, Russ contends that his convictions were against the manifest weight of the evidence. The concepts of weight and sufficiency are different and involve different standards of review. The evidence is insufficient to support a conviction if there is a complete failure of proof by the prosecution, thereby barring a retrial under the Double Jeopardy Clause.[10] But when the evidence is sufficient to support a conviction, an appellate court may still reverse the conviction as being against the manifest weight of the evidence.[11]
 {¶ 23} Nevertheless, after reviewing the evidence, we cannot conclude that the trier of fact lost its way and created such a manifest miscarriage of justice that we must reverse Russ's convictions and order a new trial. The evidence showed that Russ arranged the ambush of Baskin and Crutchfield and that he at least initiated or participated in the shootings. Therefore, the convictions are not against the manifest weight of the evidence.[12] Russ argues that his witnesses were as credible as the state's, but matters as to the credibility of evidence are for the trier of fact to decide.[13] Consequently, we overrule Russ's second assignment of error and affirm the trial court's findings of guilt.
 {¶ 24} In his third assignment of error, Russ states that the trial court improperly sentenced him. He argues that he should have been sentenced on only one firearm specification because all three felonies were committed as part of the same act or transaction. This assignment of error is well taken.
 {¶ 25} R.C. 2929.14(D)(1)(b) provides that the sentencing court should not impose more than one mandatory prison term on an offender for a firearm specification "for felonies committed as part of the same act or transaction." The phrase "same act or transaction" means "a series of continuous acts bound together by time, space and purpose, and directed toward a single objective."[14]
 {¶ 26} The state argues that because the crime involved two separate victims, sentencing on separate firearm specifications was proper. But the state relies on a case that involved allied offenses of similar import, which involves a different analysis.[15] In assessing whether multiple firearm specifications are proper, a court should focus on an individual's " 'overall criminal objectives, not on the specific animus for each crime.' Whether a defendant had a common purpose in committing multiple crimes is a broader concept than animus."[16]
 {¶ 27} In State v. Anderson,[17] the defendant and another individual shot at three men on bicycles. The defendant was convicted of three counts of felonious assault and three firearm specifications. He was sentenced to five to fifteen years' incarceration on each count and to three years' actual incarceration on each firearm specification, to run consecutively.
 {¶ 28} This court held that the defendant could only be sentenced to one term of actual incarceration on the firearm specifications. We stated that "the same offense was committed against separate victims in one continuous sequence of events. The felonious assaults occurred simultaneously and clearly developed from a single criminal adventure."
 {¶ 29} In State v. Bonner,[18] the defendant had been engaged in a scuffle with Jerome Crutcher. A short time later, as the defendant was going down a set of stairs, he saw Crutcher and four other individuals. Crutcher started toward the defendant, and the defendant shot him. The defendant then fired a second shot, which injured a bystander. He was convicted of two counts of felonious assault, each with a firearm specification. We held that the two offenses were part of the same act or transaction and, therefore, that the law authorized only one term of actual incarceration.
 {¶ 30} Similarly, in this case, all the offenses were part of a single criminal adventure, notwithstanding that they involved two victims. The offenses involved one continuous sequence of events; they were connected in time and space since all the shots were fired closely together and at the same car. The assailants' actions involved a single objective: injuring or killing Crutchfield and Baskin in retaliation for the earlier incident in the bar.[19]
 {¶ 31} We hold that the three felonies of which Russ was convicted were part of the same act or transaction within the meaning of R.C. 2929.14(D)(1)(b). Therefore, the trial court should only have sentenced Russ to one term of actual incarceration. We sustain his third assignment of error, vacate the sentences imposed for the firearm specifications, and remand the case for resentencing on the specifications. We affirm the trial court's judgment in all other respects.
Judgment affirmed in part, sentence vacated in part, and cause remanded.
[1] State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
[2] State v. Rhodes (1992), 63 Ohio St.3d 613, 617, 590 N.E.2d 261;State v. Duncan, 154 Ohio App.3d 254, 2003-Ohio-4695, 796 N.E.2d 1006, ¶ 27.
[3] Rhodes, supra, at 618.
[4] R.C. 2901.22(B).
[5] R.C. 2923.03(A)(2).
[6] R.C. 2923.03(F); State v. Coleman (1988), 37 Ohio St.3d 286,525 N.E.2d 792, paragraph two of the syllabus; State v. Brewster,157 Ohio App.3d 342, 2004-Ohio-2722, 811 N.E.2d 162, ¶ 44.
[7] State v. Johnson, 93 Ohio St.3d 240, 2001-Ohio-1336,754 N.E.2d 796, syllabus; Brewster, supra, at ¶ 45.
[8] Johnson, supra, at 245; Brewster, supra, at ¶ 45.
[9] In re T.K., 109 Ohio St.3d 512, 2006-Ohio-3056, 849 N.E.2d 286, paragraph one of the syllabus.
[10] State v. Thompkins, 78 Ohio St.3d 380, 386-388, 1997-Ohio-52,678 N.E.2d 541; State v. Ashbrook (Apr. 30, 1997), 1st Dist. No. C-960535.
[11] Thompkins, supra, at 387; Brewster, supra, at ¶ 52.
[12] Id.
[13] State v. Bryan, 101 Ohio St.3d 272, 2004-Ohio-971,804 N.E.2d 433, ¶ 116.
[14] State v. Wills, 69 Ohio St.3d 690, 691, 1994-Ohio-417,635 N.E.2d 370; State v. Hill, 1st Dist. No. C-020137, 2002-Ohio-7079, ¶ 6.
[15] State v. Moore, 161 Ohio App.3d 778, 2005-Ohio-3311,832 N.E.2d 85, ¶ 42.
[16] State v. Adams, 7th Dist. No. 00 CA 211, 2006-Ohio-1761, ¶ 54, quoting Moore, supra, at ¶ 45.
[17] (Feb. 6, 1998), 1st Dist. No. C-950608.
[18] (Feb. 2, 1994), 1st Dist. No. C-930202.
[19] See State v. Davis (Apr. 24, 1998), 11th Dist. No. 96-L-167;State v. Stilson (Dec. 13, 1996), 4th Dist. No. 95CA28.