DECISION.
{¶ 1} Defendant-appellant Rodney French was convicted on four counts of felonious assault, each accompanied by a three-year firearm specification. The trial court sentenced him to seven years' incarceration for each count and to three years' incarceration for each firearm specification. The court ordered the sentences to be served consecutively for an aggregate term of 40 years. This appeal followed.
 {¶ 2} French was charged with multiple counts of felonious assault after Braxton Tipper, William Howard, Jeno Howard, and Kathleen Wallace were injured by gunfire on April 10, 2004. The victims were in an "after-hours club" at a house located at 591 Blair Avenue in Cincinnati.
 {¶ 3} Maria Jones testified that while at the club in the early morning of April 10, she had argued with a man she later identified as French. Jones's brother interceded when they began scuffling. The owners of the after-hours club eventually threw French out when they could not calm him down. Shortly thereafter, Jones saw French going to a car. She saw French open the trunk of the car and later saw him standing outside on the driveway, shooting at the house.
 {¶ 4} Jones testified that she was outside on the second-floor porch when she saw French fire rapidly into the house. Her testimony was confusing because she also said that the owner of the establishment had pushed her inside the house when French and his friend returned from the car. Apparently she had gone outside by the time of the shooting, because she repeated several times that she was outside on the second-floor porch when French started shooting. *Page 3 
 {¶ 5} Jones admitted that she was angry at French and that she had previously been convicted of a felony.
 {¶ 6} Detective Ken Brickler investigated the crime scene and located eight shell casings at the beginning of the driveway to the after-hours club. The casings fit a 9-mm semiautomatic handgun that could rapidly fire ammunition. The door and windows in the front of the house were riddled with bullet holes.
 {¶ 7} Jeno Howard was working at the after-hours club when the shooting occurred. Howard knew French because they had gone to school together. Prior to the shooting, he saw Braxton Tipper, one of the owners of the club, remove French from the building. He saw other people removed for fighting. Shortly thereafter, he was shot in the arm while on the first floor of the club. He did not see the shooter but heard about two rounds of ammunition fired.
 {¶ 8} Kathleen Wallace was on the first floor the club when she saw French escorted out of the club. She was sitting on the arm of a couch, behind a front window, when she was shot in the head. She did not see the shooter.
 {¶ 9} Braxton Tipper testified that he had broken up a physical confrontation between French and Jones prior to the shooting. Tipper stated that the altercation between French and Jones had escalated into a "household brawl." Tipper escorted French out the front door of the house. French spewed vulgarities at him. Tipper returned inside the house, and a few minutes later he was shot in the back.
 {¶ 10} Tipper described French as a frequent patron who had been removed from the club on several previous occasions without incident. But Tipper claimed that French's attitude was different on the evening of the shooting. *Page 4 
 {¶ 11} William Howard, a co-owner of the club, testified that he had seen French fighting with Jones on the evening of the shooting. He helped to remove French from the club, and then he watched French go to a parking lot across the street from the club. While standing in the doorway of the club, Howard witnessed French and another individual retrieve something from the trunk of a vehicle and walk back towards the club with black guns in their hands. Howard shut the front door and then heard gunfire. He was shot in the back.
 {¶ 12} Cincinnati Police Specialist Kimetha Moreno investigated the case. She interviewed French after he was arrested on May 12, 2004. In the interview, French, otherwise known as "Hotrod," admitted that he had been in an altercation inside the club and that he had been told to leave. He claimed that he had then walked across the street to a parking lot where he had talked to a group of women. He returned to the yard of the after-hours club with a man named "Nick," looking for a man named "Ti." Before he had a chance to talk to Ti, he saw a man he referred to as "Skinny Pimp" shooting at the house from across the street. Moreno testified that none of the other people she had interviewed during the investigation knew of a man called "Skinny Pimp" or claimed that he was responsible for the shooting. She also testified that no fingerprints were recovered from the shell casings found outside the house.
 {¶ 13} Moreno testified that she had interviewed a bootleg cab driver with information about the case. She was recalled to testify after the cab driver had denied giving her any information. Moreno identified the cab driver in court and authenticated her taped interview with him before it was played for the jury. In the interview, the cab driver implicated French. *Page 5 
 {¶ 14} On direct examination, the cab driver stated that he did not know why he had been called to testify. He claimed that he "was totally lost" and that he had "six kids to raise." On cross-examination, the cab driver abruptly agreed with defense counsel's accusation that he had made up a story to collect a reward.
 {¶ 15} Cincinnati Police Officer Demeco Anderson, who had arrested French, testified that French had given him a false name upon his arrest.
 {¶ 16} Several witnesses testified for the defense, including French himself. French admitted that he had been forced out of the club due to an altercation with Jones. But he testified that he had been standing in the middle of Blair Avenue with Nikita Brown, his girlfriend at the time, when he heard gunfire. He ran behind a van for cover. When the shots ceased, he received a ride to his sister's house from an acquaintance driving by. He testified that the shots had come from the hill across the street from the after-hours club, but that he had not seen the shooter. French's credibility was impeached several times on cross-examination, including French's admission that he had previously been convicted of a felony.
 {¶ 17} Tikara McKinney stated that she had gone to the after-hours club to pick up French in her vehicle. While she waited for French in the parking lot across the street from the club, she saw a man shoot at the house four or five times. Like French, McKinney claimed that the shooter was standing on a hill next to the parking lot. She claimed that the shooter was not French. She stated that she did not see French after the shooting.
 {¶ 18} Nikita Brown also testified. She claimed that she and French had been standing together in the middle of Blair Avenue, to the right of the after-hours club, when she heard shots go off. She also claimed that the shots had come from the hill *Page 6 
across the street from the club. She said that French did not have a gun and was not shooting. Her back was to the shooter, preventing her from seeing him.
 {¶ 19} Dewan Brown testified that he had seen a man shooting at the after-hours club from the hill across the street. He described the shooter as light-skinned with long hair. He said that French was not the shooter.
 {¶ 20} French's mother and sister both testified that they had information concerning the identity of the shooter and that they had called Detective Moreno with this information.
 {¶ 21} On appeal, French raises two assignments of error. In his first assignment of error, he claims that his convictions for felonious assault were against the manifest weight of the evidence. Specifically, he argues that the jury lost its way in believing the testimony from the state's eyewitnesses that he had been the shooter, when he and the other defense witnesses had presented "unshakable testimony" that French was not the shooter.
 {¶ 22} By challenging the weight, but not the sufficiency, of the evidence, French concedes that there was some evidence to prove each element of each felonious assault. To examine French's claim, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, "in resolving conflicts in the evidence," the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."[1]
 {¶ 23} After reviewing the evidence, we are not convinced that the jury lost its way in evaluating the credibility of the witnesses and in assigning weight to the *Page 7 
evidence. The testimony from the defense witnesses placing the shooter on the hill across the street from the club conflicted with the physical evidence in the case: Detective Brickler found the spent shell casings in the driveway of the club, not on the hillside across the street. Also, French's earlier taped statement to Detective Moreno conflicted both with his trial testimony and with Nikita Brown's testimony concerning where he had been and whom he was with at the time of the shooting.
 {¶ 24} Evaluating the credibility of the witnesses and giving weight to the evidence are primarily for the trier of fact.[2] This was not the exceptional case where the evidence weighed heavily against the conviction.[3] Under these circumstances, we decline to usurp the jury's role as the trier of fact. Accordingly, we overrule the first assignment of error.
 {¶ 25} In his second assignment of error, French claims that the trial court improperly sentenced him. He argues that the court should have imposed only one three-year term of incarceration for the firearm specifications, because all four felonious assaults were committed as part of the same act or transaction.
 {¶ 26} R.C. 2929.14(D)(1)(b) provides that the sentencing court should not impose more than one mandatory prison term for a firearm specification "for felonies committed as part of the same act or transaction." The phrase "same transaction" means "a series of continuous acts bound together by time, space and purpose, and directed toward a single objective."[4]
 {¶ 27} In this case, the evidence established that French had fired rapidly into an after-hours club and struck and seriously injured four victims. The crimes *Page 8 
occurred within seconds of each other and developed from one senseless criminal objective. Thus, we are constrained to find merit in the argument raised in French's second assignment of error.[5] The trial court must reduce French's sentence from 40 years to 31 years.
 {¶ 28} We sustain French's second assignment of error, vacate only the sentences imposed for the firearm specifications, and remand the case for resentencing on the specifications. We affirm the trial court's judgment in all other respects.
Judgment accordingly.
PAINTER, P.J., and HENDON, J., concur.
RALPH WINKLER, retired, from the First Appellate District, sitting by assignment.
[1] State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
[2] See State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
[3] See State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541.
[4] State v. Wills, 69 Ohio St.3d 690, 691, 1994-Ohio-417,635 N.E.2d 370 (internal citation omitted); see, also, State v. Russ, 1st Dist. No. C-050797, 2006-Ohio-6824.
[5] See Russ at ¶¶ 25-31. *Page 1