[Cite as *State v. Tate*, 2026-Ohio-2067.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. | C-250351 |
| | | TRIAL NO. | B-2001014 |
| Plaintiff-Appellee, | : | | |
| vs. | : | | |
| TONY TATE, | : | *JUDGMENT ENTRY* | |
| Defendant-Appellant. | : | | |

This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 6/3/2026 per order of the court.**

**By:**_____
　　　　**Administrative Judge**

[Cite as *State v. Tate*, 2026-Ohio-2067.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                    :        APPEAL NO.    C-250351
                                          TRIAL NO.     B-2001014
    Plaintiff-Appellee,       :

 vs.                             :
                                                *O P I N I O N*
TONY TATE,                        :

    Defendant-Appellant.      :


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: June 3, 2026


*Connie Pillich*, Hamilton County Prosecuting Attorney, and *John D. Hill, Jr.,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Arenstein & Gallager* and *William Gallager*, for Defendant-Appellant.

**CROUSE, Presiding Judge.**

{¶1} Following guilty pleas and the trial court's imposition of an agreed aggregate sentence, defendant-appellant Tony Tate appeals his convictions for three counts of aggravated assault, accompanying firearm specifications, and carrying a concealed weapon. Tate raises two assignments of error for our review, arguing that the trial court erred in imposing consecutive sentences on two firearm specifications and that his trial counsel was ineffective for failing to file a motion to dismiss on speedy-trial grounds.

{¶2} We hold that the doctrine of invited error does not bar Tate from challenging an agreed sentence on appeal where that sentence was not authorized by law. We further hold that the trial court erred in imposing consecutive sentences on the two firearm specifications where the underlying felonies that the specifications accompanied arose out of the same act or transaction. But because Tate failed to object to this error below, and because he has not established that plain error resulted or that we must correct the error to prevent a manifest miscarriage of justice, we ultimately overrule the assignment of error challenging the sentences imposed on the firearm specifications. Because we also hold that Tate's trial counsel was not ineffective for failing to file a motion to dismiss, we overrule Tate's second assignment of error and affirm the trial court's judgment.

## I. Factual and Procedural History

{¶3} On February 27, 2020, an indictment was issued against Tate charging him with three second-degree-felony counts of felonious assault in violation of R.C. 2903.11(A)(2), each with an accompanying firearm specification; three second-degree-felony counts of felonious assault in violation of R.C. 2903.11(A)(1), each with an accompanying firearm specification; carrying a concealed weapon, a fourth-degree

3

felony in violation of R.C. 2923.12(A)(2); having a weapon under disability, a third-degree felony in violation of R.C. 2923.13(A)(2); and tampering with evidence, a third-degree felony in violation of R.C. 2921.12(A)(1).

{¶4} The bill of particulars alleged that Tate, armed with a concealed handgun that he was legally precluded from possessing, shot and seriously injured A.J., V.R., and J.T. It further alleged that J.T. was an innocent bystander that was struck when Tate missed his intended targets, A.J. and V.R.

{¶5} Shortly after the indictment was issued, several continuances were entered on the court's order due to the coronavirus shutdown. In August 2020, retained counsel entered a notice of appearance for Tate. Despite being represented, Tate filed three pro se motions in December 2020: a motion to suppress, a motion to request camera footage, and a motion to request more evidence.

{¶6} Between January 2021 and August 2022, 13 continuances were obtained upon Tate's request. At a hearing on August 31, 2022, retained counsel told the trial court that Tate wished to obtain new counsel. Retained counsel stated that he had procured a plea deal with the State that involved an 11-year aggregate sentence in exchange for Tate pleading guilty to three offenses, but that Tate was not satisfied with this deal. Retained counsel asked the trial court to allow Tate to obtain new counsel.

{¶7} In response to questions from the court, Tate stated that an 11-year sentence was "too much time." The court told Tate that he faced a potential sentence of at least 39 years of imprisonment, and that an 11-year sentence was a good deal. Tate told the court that the attorney who had represented him before retained counsel had "offered me 5 max, 3 minimum." In response, retained counsel requested a competency evaluation of Tate because Tate's prior counsel had Tate convinced that he was "looking at 3 to 5, maybe 7." The trial court issued an entry appointing the court

clinic forensic services to examine Tate, and the case was continued for a competency hearing. The court stated that retained counsel was to remain as counsel for Tate until the competency report was obtained.

{¶8} In September 2022, Tate filed additional pro se motions. First, he filed a motion to reduce his bond from $500,000 straight to $50,000 at ten percent. Second, he filed an "affidavit of facts." As relevant to this appeal, this document stated that he had fired his counsel, who was ineffective, and it demanded a refund of the money that he had paid counsel. The motion further asked that the charges against him be dismissed because "the 270 day limit to be brought to trail [sic] has expired." Third, Tate filed a motion to "remove counsel" because counsel was ineffective. In support, Tate contended that counsel was unreachable by phone to discuss a defense and that counsel had only met with Tate two times since he was incarcerated in February 2022.

{¶9} An entry of continuance was issued in October 2022, reflecting that retained counsel planned to hire a doctor to obtain a second opinion on Tate's competency. Four additional continuances were issued at Tate's request, all providing that the matter was continued for a competency report or hearing.

{¶10} On January 19, 2023, the trial court issued an entry finding Tate competent to stand trial. At a hearing on that date, the court stated that a second competency opinion had not been obtained. With respect to Tate's competency, retained counsel represented, "I've had conversations with Mr. Tate. His mental competency fluctuates. Sometimes I can speak and discuss the matter with Mr. Tate, and we'll have a lucid, intelligible conversation about the facts and evidence; and on other occasions I don't believe that he is understanding and comprehending my counsel and the information that I'm conveying to him." Retained counsel further

5

represented that he and Tate had a fundamental disagreement over whether self-defense applied in this case—Tate believed that it did, and retained counsel believed it did not. Retained counsel told the trial court that he was ready and prepared to go to trial, but that Tate "wants a plea and credit [for] time served and to receive probation. I said I can't procure that."

{¶11} The trial court allowed retained counsel to withdraw from Tate's representation, and Tate subsequently obtained new counsel ("appointed counsel").

{¶12} On July 25, 2023, the parties appeared before the trial court for a plea hearing. Appointed counsel told the court that the parties had reached a plea agreement that included an 11-year agreed sentence. Following a Crim.R. 11 colloquy, Tate pled guilty to three reduced and amended counts of aggravated assault (one for each victim), and to firearm specifications accompanying two of those counts. He also pled guilty to carrying a concealed weapon. Each offense that Tate pled guilty to was a fourth-degree felony.

{¶13} The trial court imposed the jointly-recommended 11-year sentence. This sentence consisted of 15 months of imprisonment for each count of aggravated assault, three years of imprisonment for each weapon specification, and 15 months of imprisonment for the offense of carrying a concealed weapon. Each of these sentences was ordered to be served consecutively, resulting in an aggregate sentence of 11 years of imprisonment.

{¶14} Tate did not immediately appeal. On May 14, 2024, he filed a petition for postconviction relief, arguing that the trial court erred by imposing consecutive terms of imprisonment on the two firearm specifications and that his trial counsel was ineffective for failing to file a motion to dismiss on speedy-trial grounds. The trial court issued an entry dismissing the petition. The court found that the asserted claims were

barred by res judicata and should have been raised in a direct appeal.

{¶15} Tate appealed the trial court's dismissal of his petition for postconviction relief. In an opinion issued May 7, 2025, this court affirmed the trial court's dismissal. *See State v. Tate*, 2025-Ohio-1638 (1st Dist.).

{¶16} In June 2025, Tate filed a motion for leave to file a delayed appeal. In July 2025, this court granted his motion.

## II. Consecutive Sentences on Firearm Specifications

{¶17} In his first assignment of error, Tate argues that the trial court erred in imposing consecutive sentences on the two firearm specifications. He contends that, pursuant to R.C. 2929.14(B)(1)(b), the trial court lacked statutory authorization to impose consecutive terms of imprisonment for the two specifications because the underlying felonies that they accompanied arose out of the same act or transaction. He further argues that the trial court's improper imposition of consecutive sentences renders his aggregate sentence void.

### A. Void vs. Voidable

{¶18} On this latter argument, Tate is incorrect. The Ohio Supreme Court has clarified the law on void versus voidable sentences and held that "sentences based on an error are voidable, if the court imposing the sentence has jurisdiction over the case and the defendant." *State v. Henderson*, 2020-Ohio-4784, ¶ 27. "A sentence is void only if the sentencing court lacks jurisdiction over the subject matter of the case or personal jurisdiction over the accused." *Id.* Here, the trial court had jurisdiction over the case and Tate, so any error in the imposition of sentence would render the sentence voidable, rather than void. We recognized as much in Tate's appeal from the trial court's dismissal of his petition for postconviction relief. *See Tate*, 2025-Ohio-1638, at ¶ 7 (1st Dist.).

{¶19} Having clarified that any error in the imposition of sentence would render Tate's sentence voidable, we now turn to the merits of Tate's argument.

### B. Agreed Sentence

{¶20} The trial court in this case imposed an agreed sentence. Where an agreed sentence is authorized by law, it cannot be challenged on appeal. *See* R.C. 2953.08(D)(1) ("A sentence imposed upon a defendant is not subject to review under this section if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge."). "The General Assembly intended a jointly agreed-upon sentence to be protected from review precisely because the parties agreed that the sentence is appropriate. Once a defendant stipulates that a particular sentence is justified, the sentencing judge no longer needs to independently justify the sentence." *State v. Porterfield*, 2005-Ohio-3095, ¶ 25.

{¶21} But the converse is true—pursuant to the plain language of R.C. 2953.08(D)(1), where the jointly-recommended and agreed sentence imposed upon an offender is not authorized by law, an offender may challenge that sentence on appeal. *See State v. Champion*, 2022-Ohio-3146, ¶ 10 (1st Dist.). "A sentence is authorized by law and is not appealable *only* if it comports with all mandatory sentencing provisions." (Emphasis added.) *State v. Williams*, 2016-Ohio-376, ¶ 4 (1st Dist.).

{¶22} So, Tate may only challenge the agreed sentence imposed by the trial court if that sentence was not authorized by law. As set forth above, Tate argues that the trial court was prohibited by R.C. 2929.14(B)(1)(b) from imposing consecutive terms of imprisonment for the two specifications because the underlying felonies that the specifications accompanied arose out of the same act or transaction.

8

### *C. Invited Error*

**{¶23}** The State contends that while Tate is "arguably correct" that the trial court's imposition of consecutive sentences on the two firearm specifications was contrary to law, any resulting error was invited by Tate. It argues that the imposed sentence was the product of protracted plea negotiations agreed to by Tate, and that he cannot now take advantage of the error that he invited.

**{¶24}** "Under the invited-error doctrine, a party cannot take advantage of an error that the party invited or induced the trial court to make." *State v. Cephas*, 2019-Ohio-52, ¶ 24 (1st Dist.).

**{¶25}** Several of our sister districts have applied the invited-error doctrine to an agreed sentence that was not authorized by law. In *State v. Reeder*, 2025-Ohio-110, ¶ 4 (8th Dist.), Reeder negotiated a plea agreement that included a hybrid sentence consisting of both a prison term and a community-control sanction (a no-contact order) for the same offense. On appeal, Reeder attempted to challenge the sentence, arguing that a sentence composed of both a prison term and a community-control sanction was unlawful. *Id.* at ¶ 10. The Eighth District declined to consider the argument, holding that "when a defendant agrees to a no-contact order as a condition of a plea agreement and the court sentences the defendant to both a prison term and a no-contact-order, the error, if any, is an invited error." *Id.* at ¶ 11. The court further explained,

> Reeder entered his guilty pleas with the understanding that the no-contact order could be imposed in conjunction with a prison term. In exchange for the dismissal of several felony charges, Reeder knowingly, intelligently, and voluntarily agreed to the potential hybrid sentences. It would be unfair to the State to allow Reeder to retain the benefit of

reduced charges without requiring him to keep his end of the deal. *Id.* at ¶ 13. The Fourth District ruled similarly in *State v. Savage*, 2015-Ohio-4205, ¶ 14 (4th Dist.) ("Because Savage agreed that the trial court was authorized to impose this restitution if the state could prove it, he invited any potential error by the trial court in doing so.").

**{¶26}** But this court implicitly ruled to the contrary in *State v. Brown*, 2016-Ohio-310 (1st Dist.), when we reversed part of a jointly-recommended sentence that was not authorized by law. The trial court in *Brown* imposed a jointly-recommended sentence that, in addition to a term of imprisonment, provided that "Brown would be ineligible for earned days of credit, transitional control, judicial release, and any other sentence reduction or modification programs in prison." *Id.* at ¶ 3. On appeal, we noted that "the statutory scheme of R.C. 2967.193 does not provide the trial court with any discretion to determine eligible offenders or to limit an eligible offender's ability to earn days of credit." *Id.* at ¶ 11. We held that "the trial court lacked authority to impose the part of the sentence limiting Brown's ability to earn days of credit" and vacated that part of Brown's sentence even though it had been agreed to and recommended. *Id.* at ¶ 12 and 20. The invited-error doctrine was not discussed in *Brown*.

**{¶27}** Our holding in *Champion*, 2022-Ohio-3146 (1st Dist.), is also instructive. In that case, Champion pled guilty to, among other offenses, involuntary manslaughter and felonious assault. *Id.* at ¶ 3. The trial court imposed an agreed and recommended sentence of 19 years of imprisonment. As part of that sentence, the terms of imprisonment imposed for involuntary manslaughter and felonious assault were to be served consecutively. *Id.* At the plea hearing, Champion stipulated that these two offenses were not allied offenses of similar import. *Id.* at ¶ 4.

**{¶28}** On appeal, Champion challenged the sentences imposed for involuntary manslaughter and felonious assault, arguing that the trial court erred in ordering them to be served consecutively because they were allied offenses. *Id.* at ¶ 7. We first explained that "a court's failure to merge allied offenses of similar import at sentencing may result in a sentence that is not authorized by law. In those instances, appellate review *is not barred* by R.C. 2953.08(D)(1) even if the sentence was jointly recommended and imposed by the court." (Emphasis added.) *Id.* at ¶ 10. We then held that it was possible for an offender to expressly waive the protections provided by R.C. 2941.25. *Id.* at ¶ 11. One way to do so, we recognized, was by stipulating in the plea agreement that the offenses were not allied. *Id.* We ultimately held that Champion had waived the allied-offense issue by stipulating that the offenses were not allied, and that "the sentences imposed by the trial court were authorized by law and are not subject to appellate review." *Id.* at ¶ 14.

**{¶29}** Guided by *Brown* and *Champion*, we hold that the invited-error doctrine does not bar an appellant's challenge to an agreed sentence that was not authorized by law. A contrary holding would be counter to the plain language of R.C. 2953.08(D)(1), which provides, "A sentence imposed upon a defendant is not subject to review under this section if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge." The legislature clearly intended that agreed sentences not authorized by law could be reviewed on appeal.

### D. Imposition of Consecutive Sentences on Two Firearm Specifications was Contrary to Law

**{¶30}** At the time that the offenses in this case were committed,[1] R.C. 2929.14(B)(1)(b) provided in relevant part that, where a prison term has been imposed under subdivision (B)(1)(a) for a firearm specification, the court shall not, "[e]xcept as provided in division (B)(1)(g) of this section . . . impose more than one prison term on an offender under division (B)(1)(a) of this section for felonies committed as part of the same act or transaction." *See* former R.C. 2929.14(B)(1)(b), as amended by 2018 Am.Sub.S.B. No. 201, at 117 (effective Mar. 22, 2019).

**{¶31}** Here, the trial court imposed sentences on two firearm specifications under former R.C. 2929.14(B)(1)(a)(ii). No parties assert that the referenced exception in former R.C. 2929.14(B)(1)(g) applies,[2] so, pursuant to former R.C. 2929.14(B)(1)(b), the trial court could only have imposed more than one prison term for these two firearm specifications if the felonies that they accompanied were not committed as part of the same act or transaction.

**{¶32}** We have explained that "a transaction means a series of continuous acts bound together by time, space and purpose, and directed toward a single objective," and that in determining whether offenses were committed as part of the same act or transaction, "courts generally evaluate whether the offenses and attendant firearm violations occurred at separate times, locations, and to different victims." (Cleaned up.) *State v. Williams*, 2020-Ohio-1368, ¶ 16 (1st Dist.).

**{¶33}** Although conceptually similar, the analysis used to determine whether

---

[1] Because "[a] statute is presumed to be prospective in its operation unless expressly made retrospective," R.C. 1.48, "[w]e apply the version of the statute in effect at the time that the offense was committed." *State v. Hudson*, 2019-Ohio-3497, ¶ 15, fn. 1 (1st Dist.).

[2] This exception only applies when "one or more of [the] felonies are aggravated murder, murder, attempted aggravated murder, attempted murder, aggravated robbery, felonious assault, or rape." Former R.C. 2929.14(B)(1)(g).

offenses were committed as part of the "same act or transaction" is different than that used to determine if two offenses are allied offenses of similar import. *State v. Russ*, 2006-Ohio-6824, ¶ 25-26 (1st Dist.) (rejecting the State's reliance on allied-offenses caselaw to argue that offenses were part of the same act or transaction, and holding that "[i]n assessing whether multiple firearm specifications are proper, a court should focus on an individual's overall criminal objectives, not on the specific animus for each crime," and that "[w]hether a defendant had a common purpose in committing multiple crimes is a broader concept than animus" (Cleaned up.)).

{¶34} No facts were provided at Tate's plea hearing regarding the underlying offenses to which he pled guilty. The bill of particulars provided,

> [O]n or about 2-19-20 at approximately 7:30p.m. at or near the Valley Shopping Center, 7617 Reading Road, City of Cincinnati, Hamilton County, Ohio, the defendant armed with a concealed handgun that he was legally precluded from possessing, shot and seriously injured [A.J.], [V.R.], and J.T. J.T. was struck when one of the defendant's shots missed his intended target and randomly struck J.T. The defendant disposed of the weapon after he left the scene and it has not been recovered.

{¶35} From the bill of particulars, the indictment, and Tate's guilty pleas, we can discern that each count of aggravated assault to which Tate pled guilty pertained to a different victim, and that all victims were shot by Tate in the same incident and at the same time. On these facts, we can determine that the underlying offenses of aggravated assault that the firearm specifications accompanied were committed as part of the same act or transaction. *Compare State v. French*, 2007-Ohio-726, ¶ 25-27 (1st Dist.) (holding that the trial court could only have imposed a sentence on one

13

firearm specification because the crimes were part of the same act or transaction where defendant "fired rapidly into an after-hours club and struck and seriously injured four victims").

**{¶36}** While Tate has established that the trial court's imposition of more than one sentence on the two firearm specifications was prohibited by former R.C. 2929.14(B)(1)(b), he failed to object below to the trial court's imposition of consecutive sentences on these specifications. As a result, he is limited to a plain-error review on appeal. *See State v. Rogers*, 2015-Ohio-2459, ¶ 21 ("by failing to seek the merger of his convictions as allied offenses of similar import in the trial court, Rogers forfeited his allied offenses claim for appellate review"); *State v. Williams*, 2025-Ohio-1345, ¶ 45 (1st Dist.) (same).

**{¶37}** Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." To prevail under the plain-error doctrine, an appellant must show (1) "that an error occurred," (2) "that the error was obvious," and (3) "that there is a reasonable probability that the error resulted in prejudice, meaning that the error affected the outcome of the trial." (Cleaned up.) *State v. Bailey*, 2022-Ohio-4407, ¶ 8. "'Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *State v. Samueal*, 2023-Ohio-3322, ¶ 17 (1st Dist.), quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

**{¶38}** We have already explained that the underlying felonies in this case were committed as part of the same act or transaction and that the trial court was prohibited by R.C. 2929.14(B)(1)(b) from imposing more than one sentence on the two specifications that accompanied those offenses. We further hold that the trial court's

error in imposing consecutive sentences on the firearm specifications was obvious.

**{¶39}** The remaining question for this court to answer is whether the error resulted in prejudice. While Tate conceded in his primary brief that he was limited to a plain-error review, he made no prejudice argument in the brief. Tate argued in his reply brief that he was prejudiced by this error because he is ineligible to earn days of credit or participate in an early release program for the time that he was serving on the firearm specifications pursuant to R.C. 2967.193, R.C. 2967.194, and R.C. 2929.14. Arguments raised for the first time in a reply brief need not be considered. *See State v. Gray*, 2025-Ohio-4607, ¶ 36 (1st Dist.). We accordingly decline to consider Tate's argument, to which, we note, the State has had no opportunity to respond.

**{¶40}** But even if we were to consider Tate's prejudice argument and ultimately find it to be meritorious, we would not take notice of the error in this case because it does not present "'exceptional circumstances,'" and because correction of the error is not necessary to "'prevent a manifest miscarriage of justice.'" *See Samueal*, 2023-Ohio-3322, at ¶ 17 (1st Dist.), quoting *Long*, 53 Ohio St.2d 91, at paragraph three of the syllabus.

**{¶41}** While Tate's ability to earn days of credit on three years of the 11-year sentence imposed by the trial court may have been eliminated, there is no guarantee that Tate would have actually earned days of credit. Further, Tate received a large benefit by entering the plea bargain and agreeing to the sentence that he is now challenging. As part of the plea, the State reduced three of the charges to which Tate pled guilty from second-degree-felonious-assault charges to fourth-degree-aggravated-assault charges. It also dismissed the firearm specification accompanying one of those charges, as well as the charges of having a weapon while under disability and tampering with evidence.

15

{¶42} And we cannot ignore the fact that Tate asked the trial court to impose consecutive sentences on the two firearm specifications. *Compare State v. Rohrbaugh*, 2010-Ohio-3286, ¶ 7 (the trial court's error in allowing the State to amend an indictment as part of plea negotiations was not reversible plain error because it did not result in a miscarriage of justice and because the defendant "cannot take advantage of an error that he invited through the plea negotiations").

{¶43} We accordingly hold that no plain error resulted from the trial court's imposition of consecutive sentences on two firearm specifications that accompanied felony offenses arising out of the same act or transaction. Tate's first assignment of error is overruled.

### III. Ineffective Assistance

{¶44} In his second assignment of error, Tate argues that his trial counsel provided ineffective assistance "by not filing a motion to dismiss the matter for a violation of his right to a speedy trial as guarenteed [sic] by Ohio law and the Constitutions of both the United States of America and the State of Ohio."

{¶45} Tate's allegations of ineffectiveness are directed at appointed counsel. He argues that if appointed counsel had investigated the record, he would have discovered that retained counsel requested numerous continuances and waived speedy-trial time against Tate's expressed written wishes. Tate contends that his multiple pro se filings alleging a speedy-trial violation and that he had fired retained counsel demonstrate that time was waived without his consent.

{¶46} Tate specifically contends that the time retained counsel waived from October 5, 2022, until January 19, 2023, for the stated purpose of obtaining a second competency evaluation should not have been attributed to Tate. He argues that appointed counsel should have filed a motion to dismiss because Tate's incarceration

and failure to be brought to trial during this 106-day period demonstrated a violation of his speedy-trial rights.

{¶47} Counsel will not be considered constitutionally ineffective unless her or his performance was deficient and caused actual prejudice to the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989). Counsel's performance will only be deemed deficient if it fell below an objective standard of reasonableness. *Strickland* at 687-688; *Bradley* at 142. A reviewing court must indulge a presumption that counsel's behavior fell within the acceptable range of reasonable professional assistance. *Strickland* at 689; *Bradley* at 142. A defendant is only prejudiced by counsel's performance if there is a reasonable probability that the outcome of the proceedings would have been different but for the deficient performance. *Strickland* at 694; *Bradley* at 142.

{¶48} To demonstrate that counsel was ineffective for failing to file a motion to dismiss for speedy-trial violations, "the defendant must show that the motion would have been successful and the case would likely have been dismissed." *State v. Mango*, 2016-Ohio-2935, ¶ 18 (8th Dist.).

{¶49} Tate was charged with multiple felony offenses. As such, he had to be brought to trial within 270 days of his arrest. *See* R.C. 2945.71(C)(2). And because Tate was incarcerated throughout the course of the proceedings, each day that he was incarcerated counted as three days. *See* R.C. 2945.71(E). Tate therefore had to be brought to trial within 90 days, unless time was extended for one of the reasons set forth in R.C. 2945.72. *See State v. Bullucks*, 2018-Ohio-2159, ¶ 21 (1st Dist.).

{¶50} As relevant to this appeal, R.C. 2945.72 provides that the time within which an accused must be brought to trial may be extended by any time periods "during which the accused is mentally incompetent to stand trial or during which the

17

accused's mental competence to stand trial is being determined," as well as for "[t]he period of any continuance granted on the accused's own motion." R.C. 2945.72(B) and (H).

**{¶51}** As we review Tate's argument, we focus on the period between October 5, 2022, and January 19, 2023, as it is this time that Tate argues was not attributable to him and resulted in the speedy-trial violation. During this period, five continuances were granted at Tate's request. The entries granting the first three continuances provided that they were granted for a report on competency and that retained counsel was going to hire a doctor for a second opinion on competency. The entry granting the fourth continuance provided that the matter was continued for a competency hearing because retained counsel was in trial in another county. And the fifth and final entry of continuance simply provided that the matter was continued for a competency hearing. Each entry indicated that time had been waived.

**{¶52}** Tate has arguably established that these continuances were obtained against his wishes. In September 2022, less than one month before retained counsel obtained the first in the series of continuances described in the preceding paragraph, Tate filed three pro se motions. Collectively, these motions established that Tate believed he had fired retained counsel, who he deemed ineffective, and that Tate asked for the charges against him to be dismissed on speedy-trial grounds.

**{¶53}** But "it is well-established that speedy trial rights may be waived by defense counsel, with or without the defendant's consent." (Cleaned up.) *State v. Mitchell*, 2023-Ohio-724, ¶ 24 (1st Dist.); *see State v. Taylor*, 2002-Ohio-7017, ¶ 33 ("a defendant is bound by his counsel's waiver of speedy trial rights, even though the waiver might have been executed without his consent").

**{¶54}** The record establishes that retained counsel legitimately questioned

Tate's competency. Retained counsel explained that Tate had an unrealistic expectation of what defenses could be presented at trial and the length of the sentence that he could receive in a plea bargain. Retained counsel also believed that Tate did not consistently understand or comprehend the information that counsel provided to him.

**{¶55}** Contrary to Tate's assertion, the record does not establish that retained counsel's requests for continuances and accompanying waivers of time were not made in good faith and were not for a legitimate purpose. The continuances requested from October 5, 2022, until January 19, 2023, were thus properly charged to Tate pursuant to R.C. 2945.72(B) and (H). Because this period did not count against the State, a motion to dismiss on speedy-trial grounds would not have been successful. Accordingly, appointed counsel was not ineffective for failing to file such a motion. *See Mango*, 2016-Ohio-2935, at ¶ 18 (8th Dist.); *State v. Feltha*, 2017-Ohio-8640, ¶ 12 (1st Dist.) (where a motion to suppress would not have been successful, trial counsel was not ineffective for failing to file it).

**{¶56}** Tate's second assignment of error is overruled, and the trial court's judgment is affirmed.

Judgment affirmed.

**BOCK** and **NESTOR, JJ.,** concur.